BTZALEL HIRSCHHORN, ESQ.
ANDERSON SHEN, P.C.
125-10 Queens Blvd Ste 218
Kew Gardens, NY 11415
Tel: (718) 263-6800
Fax: (718) 520-9401
Email: Bhirschhorn@andersonshen.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK (MANHATTAN)**
----------------------------------------------------------x
In re:                                     Chapter 7

                                           Case No. **16-10320**

ISAAC PAREDES,

                        Debtor.
----------------------------------------------------------x       **Adversary Proceeding #: 16-01064-mg**
                                                                  **Pre-Trial Memorandum**
BORIS MEDINA,            Plaintiff,

-against-

ISAAC ALAINS PAREDES,

                        Defendant.
----------------------------------------------------------x

## FINAL PRE-TRIAL MEMORANDUM

**Btzalel Hirschhorn, Esq.,** an attorney duly licensed to practice law before the Courts of this State and before the Courts of the Southern District of New York, hereby submits the following pre-trial memorandum on behalf of the Defendant and in support of a ruling finding:

1. That Defendant fulfilled the terms of the agreement between the parties and therefore never incurred a debt to Plaintiff under the meaning of 11 U.S.C. §101)(5)(&(12); or in the alternative;

2. In the event this Court finds that Defendant did incur a debt to Plaintiff; that the debt was

1

NOT incurred through false pretenses, a false representation, or actual fraud under the meaning of 11 USC 523(a)(2)(A). The debt is therefore dischargeable and has already been discharged pursuant to the October 20, 2016 Order of this Court granting the Debtor a general discharge pursuant to 11 U.S.C. §727; and

3. The Debtor did NOT inflict any willful and malicious injury to the Plaintiff under the meaning of 11 U.S.C. §523(a)(6).

## I. Debtor Never Breached the Alleged Agreement; Consequently Debtor Never Incurred a Debt to Plaintiff

4. 11 U.S.C. §101(12) provides that "[t]he term "debt" means liability on a claim." Claim is defined by 11 U.S.C. §101(5) as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured

5. The crux of Plaintiff's claim appears to a claim for Debtor's alleged breach of performance under subsection (B) of §105(a), as cited above.

6. "To sustain a breach of contract cause of action, plaintiff must show: (1) an agreement; (2) plaintiff's performance; (3) defendant's breach of that agreement; and (4) damages." The Empire Room, LLC v. Empire State Bldg. Co. L.L.C., 2017 NY Slip Op 31105(U) (Sup. Ct.).

7. "The fundamental rule of contract interpretation is that agreements are construed in accord with the parties' intent." Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P., 60 A.D.3d 61, 66 (2008). "The best evidence of what parties to a written agreement

intend is what they say in their writing . . . [t]hus, a written agreement that is clear and unambiguous on its face must be enforced according to the plain terms, and extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous." Id.

8. In the instant matter, as discussed in the Joint Pre-Trial Order, the only written documents evidencing the parties' agreement are the shareholder meeting minutes and the written agreement between Plaintiff and Defendant. See Defendant's Exhibits G & H to Joint Pre-Trial Order. As discussed in the Joint Pre-Trial Order, those documents are filled with typos making the precise intent of the parties ambiguous.

9. What is clear though from all of Plaintiff's pleadings and from the stipulated facts in the Joint Pre-Trial Order, is that the parties intended for Plaintiff to acquire an ownership interest in a restaurant called Tapas City Island.

10. Turning to the extrinsic evidence, it is clear that Defendant fulfilled the terms of the agreement. The parties' intent was for Defendant to sell a share of the corporation that owned and operated Tapas City Island. The evidence plainly demonstrates that the name of the corporation that owned and operated Tapas City Island was in fact Midnight Lounge 1, Inc. and NOT Midnight Lounge.

11. Among the numerous bank and government documents contained in Defendant's exhibits that all state 'Midnight Lounge 1, Inc. D/B/A Tapas City Island;' perhaps most glaring is the 'Chase Bank Add Signer Form' (see Defendant's Exhibit L). The form is ***signed*** by Plaintiff and expressly states the name of the business as 'Midnight Lounge 1, Inc. DBA Tapas City Island.'

12. Contrary to Plaintiff's assertions, all of the Chase Bank documents state 'Midnight Lounge 1 Inc., DBA Tapas City Island.

13. As Plaintiff concedes that the stock certificate he was issued was in fact for Midnight Lounge 1, Inc., there was no breach by Defendant. Since no breach ever occurred, there was never a period in time when Defendant was ever indebted to Plaintiff. Consequently, there is no debt to even declare non-dischargeable.

## II. In the event this Court Finds Defendant Did Incur a Debt to Plaintiff; Such Debt was NOT Incurred through False Pretenses, a False Representation, or Actual Fraud

14. The principal purpose of the Bankruptcy Code is to grant a fresh start to "the honest but unfortunate debtor." Stillwater Liquidating LLC v. Gray (In re Gray), 2016 Bankr. LEXIS 804 (U.S. Bankr. S.D.N.Y. Mar. 15, 2016). The denial of a debtor's discharge is "an extreme penalty for wrongdoing," State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996). The discharge provisions "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" Id.

15. 11 U.S.C. §523(a)(2)(A) excepts from discharge a debt obtained by false pretenses, a false representation, or actual fraud.

16. It is long established, that:

> [t]o sustain a cause of action under this section, a creditor must establish the following elements: (1) the debtor made representations which the debtor knew were false; (2) the debtor made the representations with the intent to deceive; (3) the creditor relied on the false representation; and (4) the creditor suffered a loss as a result of this reliance."

DeRosa v. Jacone, 156 B.R. 740, 743 (Bankr. S.D.N.Y. 1993).

17. In the instant matter, the exhibits Plaintiff has proposed to introduce at trial, fail to establish even one of the requisite elements. Likewise, Plaintiff has also failed to allege any specific facts, which if true, would establish any of the above elements.

18. As discussed above, the shareholder meeting minutes and the written agreement were both prepared by Mr. Mohamed Ashraf. Mr. Ashraf was a tax preparer that Debtor occasionally used to notarize documents. Mr. Ashraf was not an accountant and Debtor never used Mr. Ashraf for accounting advice. Debtor is a layperson and simply did not realize that there was a typo in the documents.

19. Debtor granted Plaintiff access to all of the books and records of Tapas City Island prior to the signing of the agreement. Plaintiff reviewed all of the books and records and signed the agreement with full knowledge of the financial affairs of Tapas City Island. Debtor never intended to deceive Plaintiff. The best evidence of Defendant's honest intent is that the stock certificates issued to Plaintiff were for the same corporation that held the bank account for Tapas City Island.

20. As will be evidenced at trial, the dispute began when Plaintiff failed to tender the remaining $50,000 to Defendant and informed Defendant that he had no intent to tender the remaining $50,000.

21. At the time of the signing of the agreement and receiving the stock certificates, Plaintiff did not lodge any protest with Defendant. Plaintiff never alleged a claim of receiving incorrect stock certificates until the instant adversary proceeding was commenced nearly five years after receipt of the stock certificates.

22. Even in his state court complaint Plaintiff did not allege that he received the wrong stock certificates. Rather, Plaintiff makes a new claim that "defendant was taking profits to pay for personal expenses." (See p. 47 of Defendant's Exhibit P). This is a claim that appears nowhere in the pleadings in the instant action.

23. Plaintiff possibly attempts to rest his case on a liquor license which bore the name

'Midnight Lounge, DBA Tapas City Island.' This is a red herring. Plaintiff was never promised an ownership interest in the liquor license. Indeed, if this were so the registration of the liquor license would have to be amended to include the information of Plaintiff. None of the documents produced by Plaintiff state anything about Plaintiff acquiring an ownership interest in a liquor license. Ownership interest in a liquor license was never even discussed between the parties.

24. The only relevant fact is that the liquor license was validly registered to Tapas City Island. Tapas City Island was legally entitled to sell liquor and Plaintiff was acquiring an ownership interest in this restaurant. Plaintiff was granted the agreed upon ownership interest and issued the correct stock certificates.

25. It is clear from all of the above that this is simply a case of buyer's remorse by Plaintiff. Defendant issued the correct stock certificates to Plaintiff and gave Plaintiff full access to the books and records of Tapas City Island prior to the signing of the agreement. The written documents prepared by Mr. Ashraf which said 'Midnight Lounge, Inc. DBA Tapas City Island' were simply a typo. There was no fraud, no intent to deceive, and certainly no deception by Defendant.

26. Plaintiff's claims come nowhere close to meeting the strict burden imposed upon Plaintiffs in non-dischargeable proceedings. To deny Defendant a discharge based upon a typo, would run contrary to the fresh start principle articulated above and long held as foundational bedrock of bankruptcy policy.

### III.     Debtor Did NOT Inflict Willful and Malicious Injury on Plaintiff

27. 11 U.S.C. §523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

28. "To prove that a debtor acted willfully under 11 U.S.C. § 523(a)(6), the plaintiff must demonstrate that the debtor deliberately intended to injure the plaintiff and not merely that the debtor committed an intentional act that unintentionally inflicted injuries on the plaintiff." Hough v. Margulies (In re Margulies), 541 B.R. 156, 162 (Bankr. S.D.N.Y. 2015). "The term "malicious" in the context of 11 U.S.C.S. § 523(a)(6) means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." Id. at 163. "

29. Plaintiff has wholly failed to even allege specific facts or set forth any documentation establishing any of the above elements. For starters, Plaintiff has failed to even demonstrate any injury whatsoever. Plaintiff received the stock certificates for the corporation that owned Tapas City Island. Plaintiff concedes that Tapas City Island was the restaurant he intended to invest in. Plaintiff cannot possibly have been injured by receiving exactly what he bargained for.

30. Willfulness and maliciousness are not even relevant as Plaintiff has failed to even specifically allege or set forth admissible documentary evidence demonstrating any injury.

31. Regardless, as already discussed, the discrepancies between the written documents prepared by Mr. Ashraf and the stock certificates issued to Plaintiff were a result of a typographical error; not a wrongful or unjustified action without excuse as required by §523(a)(6). As already discussed, these documents are filled with numerous other typos. Mr. Ashraf was a tax preparer, not an accountant; the documents were typed out in a hasty and sloppy fashion. Plaintiff had equal opportunity to review the documents before signing and lodged no protest. Defendant thus committed no willful or malicious injury

as defined by 11 U.S.C. §523(a)(6).

## **CONCLUSION**

In conclusion Defendant did not incur any debt to Plaintiff. Regardless, even if a debt was incurred it was not through actual fraud, false pretenses, or a false representation and Plaintiff certainly did not suffer any willful or malicious injury.

Date: May 29, 2017
Kew Gardens, New York

    /S/ Btzalel Hirschhorn, Esq.
Btzalel Hirschhorn, Esq.
ANDERSON SHEN, P.C.
Attorneys for Defendant
125-10 Queens Blvd, Ste 218
Kew Gardens, NY 11415
718-263-6800
Bhirschhorn@andersonshen.com
Counsel for Debtor Defendant